**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**STEPHANIE D. VAUGHN,**

    **Plaintiff,**

  **v.**

           **1:16-cv-1107-WSD**

**AETNA LIFE INSURANCE
COMPANY,**

     **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Aetna Life Insurance

Company's ("Aetna") Motion for Judgment on the Administrative Record [22] and

Plaintiff Stephanie D. Vaughn's ("Ms. Vaughn" or "Plaintiff") Motion for

Summary Judgment [25].  Also before the Court is Aetna's Motion for Leave to

File Under Seal [24] and Aetna's Motion for Oral Argument regarding its Motion

for Judgment on the Administrative Record [32].

## I.  BACKGROUND

Plaintiff Stephanie Vaughn is the daughter of Mr. James Sheffield, deceased,

and the named beneficiary of his life insurance policy.  Mr. Sheffield was an

employee of Lafarge North America Inc. ("Lafarge") from 1980 until February 5,

2010, when he left his employment due to a disability.  Mr. Sheffield, while

employed, participated in an employee welfare benefit plan (the "Plan") sponsored

by Lafarge.  The Plan includes long term disability ("LTD") benefits and death

benefits under a basic and supplemental life insurance program.  Mr. Sheffield died

on October 24, 2012.  This action is a dispute regarding Aetna's denial of benefits

to Plaintiff for supplemental life insurance coverage ("Supplemental Life") under

the Plan.  There is no dispute regarding Mr. Sheffield's LTD and basic life

insurance benefits.  Aetna was the Plan administrator for Supplemental Life

coverage under the Plan.

A.     The Plan and Death Benefits

The Plan provided Basic and Supplemental Life to Mr. Sheffield, funded by

the Group Life and Accident and Health Insurance Policy No. GP-885600, issued

by Aetna to Lafarge.  (Administrative Record [23] ( "AR")  at 000297).  The Basic

Life insurance ("Basic Life") provided benefits equal to 200% of the employee's

basic annual earnings at the time of death, rounded up to the next $1,000.

(AR000250).  The Plan provided that benefits generally terminate on the last day

of the month during which the employee ceases active work.  (AR000236).  The

Plan allowed Basic Life coverage to continue after the employee ceased active

work if Lafarge determined that the employee became "totally and permanently

disabled" while insured and Lafarge continued premium payments.[1]  Mr. Sheffield

qualified for this extension, and Aetna paid the $130,000 Basic Life benefit to

Plaintiff when he died.[2]  Benefits under the Basic Life coverage are not at issue in

this dispute.[3]

The Plan also provided Supplemental Life coverage.  (AR000250).[4]  It is

this coverage that is at issue in this case.  Under the Supplemental Life coverage

provisions, Supplemental Life coverage premium payments are waived if the

employee is determined to be totally and permanently disabled, as that term is

---

[1]    The Plan states:

> You may remain eligible for Life Insurance coverage, subject to
> change or termination as provided elsewhere in the group contract, if
> your Employer determines that you have become permanently and
> totally disabled, if: the total disability starts while you are insured, on
> or after the date this subsection applies to you and before you retire;
> and your Employer continues premium payments for this coverage.
> This eligibility ceases on the date your Employer determines that you
> are no longer permanently and totally disabled.

(AR000249).

[2]    Mr. Sheffield's salary on his last day of work was $64,631.04, thus under the
Basic Life coverage, his death benefit was $130,000.

[3]    The Plan also provides long term disability benefits.  Mr. Sheffield was
employed by Lafarge until February 5, 2010.  On August 7, 2010, he was approved
for long term disability benefits.  (AR000199, 572).  These benefits were paid until
his death and are not at issue in this dispute.

[4]    Mr. Sheffield opted for the maximum Supplemental Life coverage of
$200,000.  (AR000208).

defined in the Plan (the "Waiver of Premium"). Whether an employee is "totally and permanently disabled" is a decision required to be made by Aetna.[5] The Waiver of Premium provision stated:

> If you are not able to work due to disease or injury, your insurance may be extended if Aetna determines you are permanently and totally disabled. If a determination of permanent and total disability is made, you will not have to make any further contributions for your coverage and no premium payments will be required from your Employer.
>
> You are permanently and totally disabled only if disease or injury stops you from working at your own job; or any other job for pay or profit; and it must continue to stop you from working any reasonable job.
>
> A "reasonable job" is any job for pay or profit which you are, or may reasonably become fitted for by education, training, or experience.

(AR000221).

### B. The Supplemental Life Coverage Request

On August 10, 2010, Mr. Sheffield submitted to Aetna a "Group Claim Form – Permanent and Total Disability – Life Insurance." (AR000205). Mr. Sheffield claimed Supplemental Life coverage and sought a waiver of premium on the grounds he was permanently and totally disabled. On March 29, 2012, Aetna sent a letter (the "March 29, 2012, Denial Letter") to Mr. Sheffield

---

[5] Lafarge is responsible for making the disability determination under the Basic Life coverage provision.

denying his Supplemental Life insurance claim.  (AR000341-344).  Aetna

explained:

> We have completed our review of your claim for the Waiver of
> Premium benefit and have determined that the information received in
> support of this claim has not established that this loss falls within the
> Permanent and Total Disability coverage requirements of the Policy.
> Accordingly, the Waiver of Premium benefit in the amount of
> $200,000.00 has not been approved for you under the terms of the
> Policy.
> . . . .
>
> Based on our review of the clinical documentation in your file, we
> have determined that there was insufficient medical evidence to
> support a permanent and total disability, one that will preclude you
> working at any occupation, and therefore, you do not qualify for an
> extension of your Life Insurance benefit.  For these reasons, we are
> unable to approve your request.

(AR000342-43).  The letter cited two physicians' statements that did not support

Mr. Sheffield's disability including because there was no information to support

that he was unable to participate in vocational rehabilitation.

The March 29, 2012, Denial Letter explained to Mr. Sheffield that he had a

right to appeal the decision not to provide Supplemental Life benefits.  It also

informed him that he had a right to bring a claim under ERISA if the denial of the

insurance benefit was upheld on appeal.  He was told:

> If you disagree with this determination of benefits, you have a right to
> a review of the decision and to bring a civil action under Section
> 502(a) of [ERISA] if your denial is upheld on appeal.  [Aetna] will

review any additional evidence you submit, including but not limited
to:

- The specific information listed above,[6] and
- Any other claim information or documentation you believe
  would assist us in reviewing your claim.

To obtain a review, you or your representative should submit a request
in writing to this office. Your request should include the group name
(e.g., employer), name of the insured, the insured's social security
number and the issues and comments and any documents, records or
other information that you would like to have considered, whether or
not submitted in connection with the initial claim. You may also
receive, upon request free of charge, documents, records and other
information relevant to your claim. The written request for review
must be mailed or delivered within **180** days following receipt of this
explanation. Ordinarily, you will receive notification of the final
determination within 45 days following your receipt of your request.

(AR000343 (emphasis in original)). On March 29, 2012, Aetna sent a similar

letter to Lafarge, notifying Lafarge of Aetna's denial, and Lafarge ceased paying

premiums for Mr. Sheffield's Supplemental Life benefits. (AR000345).

---

6       The information that could be submitted was the following:

Any additional medical information or records that would support a
finding that you are permanently and totally disabled. This additional
medical information should include all objective findings, such as lab
tests, x-rays, as well as findings of specific physical or cognitive
restrictions of limitations that are determined as a result of a
physician's examination [and]

Any other claim information or documentation you believe would
assist us in reviewing your claim.

(AR000343).

Mr. Sheffield did not seek review of the denial of his Waiver of Premium benefits within the 180-day period required in the March 29, 2012, Denial Letter.[7] He died on October 24, 2012. (AR000355).

C. The January 21, 2015, Denial of Plaintiff's Claim
for the Supplemental Life Benefit

On November 24, 2014, over two years after Mr. Sheffield's death, Ms. Vaughn sent a letter to Aetna demanding that Aetna pay Ms. Vaughn Supplemental Life benefits in the amount of $200,000, plus interest.[8] (AR000500).

On January 21, 2015, Aetna responded to Ms. Vaughn's letter (the "January 21, 2015, Denial Letter"), denying her demand. (AR000507-510). The January 21, 2015, Denial Letter explained that "[i]n order for the [Supplemental] Life Insurance Benefit to be payable under this Policy, Mr. Sheffield must have had [Supplemental] Life Insurance coverage in force at the time of his death." (AR000509). The letter explained further that because Aetna had determined that Mr. Sheffield was not totally and permanently disabled and Lafarge discontinued Supplemental Life insurance premiums, Mr. Sheffield's Supplemental Life coverage terminated on or about March 29, 2012. The letter also explained the distinction between the Basic Life coverage that was extended due to illness after

---

[7]    The 180-day period concluded on September 25, 2012.
[8]    Plaintiff was represented by counsel who prepared the letter.

Mr. Sheffield ceased working, and the Supplemental Life Insurance coverage that was not:

> [T]he requirements for payment of additional benefits under the Supplemental Life Insurance are different from the requirements for Long Term Disability and Basic Life Insurance coverage. Even though Mr. Sheffield met the eligibility for Long Term Disability Benefit and extension for Basic Life Insurance determined by [Lafarge], we have determined that there was insufficient medical evidence to support a permanent and total disability under the Permanent and Total Disability Feature for his Supplemental Life Insurance coverage. Our denial letter was sent to Mr. Sheffield and [Lafarge] on March 29, 2012. According to [Lafarge], Mr. Sheffield's premium payment(s) stopped when they received the denial letter and no premium contributions were paid for Mr. Sheffield's Supplemental Life Insurance coverage at the time of this death.

(AR000509).

On February 26, 2015, Aetna sent a letter to Ms. Vaughn reiterating that the permanent and total disability finding required to support a waiver of Supplemental Life premiums is different from the extension of the Basic Life benefit. Under the Basic Life benefit program, Lafarge (not Aetna) determined whether an employee is totally and permanently disabled. (AR000519).

On March 13, 2015, Ms. Vaughn sent a letter to Aetna to "serve as a request for review of the denial by Aetna of James Sheffield's application for waiver of premiums for supplemental life insurance premiums." (AR000513-14). This was the first time that Mr. Sheffield, or anyone acting on his behalf, sought review of

Aetna's March 29, 2012, decision finding inadequate medical support to find Mr. Sheffield totally and permanently disabled.

Aetna treated Ms. Vaughn's March 13, 2015, letter as requesting review of the denial *to her* of benefits under the Supplemental Life Insurance coverage, not a review of the 2012 decision denying Mr. Sheffield the Waiver of Premium extension. On April 27, 2015, Aetna sent a letter to Ms. Vaughn confirming its denial of benefits after the administrative review it conducted. (AR000570-574). The letter again explained that although Plaintiff received a $130,000 Basic Life death benefit, Supplemental Life coverage was not in effect when Mr. Sheffield died because Lafarge had ceased paying premium payments on March 29, 2012, and Mr. Sheffield did not seek any kind of review of Aetna's no total and permanent disability decision. (AR000573). The letter also notified Ms. Vaughn that Aetna's decision was final and that she could bring a claim under Section 502(a) of ERISA.

D.    Procedural History

On March 11, 2016, Plaintiff filed her original complaint in the State Court of Fulton County, alleging breach of contract and other state law claims arising under the Policy. ([1.4]). On April 5, 2016, Aetna removed the action to this Court based on federal ERISA preemption of the claims asserted. ([1]).

On April 6, 2016, Aetna moved to dismiss the original complaint for failure to state a claim, and moved to strike Plaintiff's jury demand. ([2]).[9]

On May 5, 2016, Plaintiff filed her Amended Complaint to conform to the requirements of ERISA and requested leave to add Lafarge as a party. ([6], [8]). The Amended Complaint alleges claims under ERISA that Aetna failed to pay Ms. Vaughn the Supplemental Life insurance benefits under the Plan (Count I) and that Aetna and Lafarge breached their fiduciary duties to Mr. Sheffield (Count II). ([8] at 5, 7).

On May 23, 2016, Aetna moved to dismiss Count II of the Amended Complaint [11], and on February 27, 2017, the Court granted the Motion [15].

On October 11, 2017, Aetna filed its Motion for Judgment on the Administrative Record. ([22]).[10]

On October 11, 2017, Plaintiff filed her Motion for Summary Judgment. ([25]).[11]

---

[9] This motion was denied as moot when the Amended Complaint was filed. ([15]).

[10] Also on October 11, 2017, Aetna filed its Motion for Leave to File Under Seal, seeking to keep the Administrate Record sealed due to its inclusion of Mr. Sheffield's personal health information and medical records. ([24]).

[11] On November 17, 2017, Aetna filed its Motion for Oral Argument regarding its Motion for Judgment on the Administrative Record. ([32]). The Court finds it

## II.     THE ERISA FRAMEWORK

### A.     ERISA Standard

ERISA benefits denial cases place the district court as more of "an appellate tribunal than as a trial court."  Curran v. Kemper Nat. Servs., Inc., No. 04-14097, 2005 WL 894840, at * 7 (11th Cir. 2005) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002)).  The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."  Id.; see also Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011) ("Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision.").

Where an ERISA plan provides discretion to the claim administrator to decide benefit claims or construe the plan, a court reviews the determination under the arbitrary and capricious standard.  Lee v. Blue Cross Blue Shield, 10 F.3d 1547, 1549-50 (11th Cir. 1994).  The Eleventh Circuit in Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132 (11th Cir. 2004) set a six-step analytical framework to review an ERISA plan administrator's decision:

can decide this matter on the record and pleadings, and the Motion for Oral Argument is denied.

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong"; if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision is in fact "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Smith v. Pension Comm. of Johnson & Johnson, 470 F. App'x 864, 866-67 (11th Cir. 2012) (citing Blankenship, 644 F.3d at 1355).

In the first step, "[t]he court must consider, based on the record before the administrator at the time its decision was made, whether the court would reach the same decision as the administrator." Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008); see Williams, 373 F.3d at 1138 n. 8 (11th Cir. 2004) (stating a decision is "wrong" if "the court disagrees with the administrator's decision."). "In making this determination, the Court does not give

any deference to [the administrator's] decision and, instead, stands in the shoes of the administrator and starts from scratch, examining all the evidence before the administrator as if the issue had not been decided previously." Acree v. Hartford Life & Acc. Ins. Co., 917 F. Supp. 2d 1296, 1306 (M.D. Ga. 2013) (citation and internal quotation marks omitted). The Court applies the terms of the plan to determine whether the administrator was "wrong" in denying benefits to the claimant. Brannon v. BellSouth Telecomm., Inc., 318 F. App'x 767, 769 (11th Cir. 2009).[12]

B.    Burden of Proof

"A plaintiff suing under [ERISA] bears the burden of proving his entitlement to contractual benefits. If, however, the insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage." Horton v. Reliance Std. Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998).

---

[12]    The Court discusses only the steps appropriate to a review of the administrator's decision in this case. Since the Court does not find the administrator's decision de novo wrong, the remaining steps are not discussed. Even if they applied, for the reasons stated below, the administrator's decision would be affirmed.

C.     The Exhaustion Requirement

It is "well-settled" in the Eleventh Circuit that "plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." Perrino v. S. Bell Tel. & Tel. Co., 209 F.3d 1309, 1315 (11th Cir. 2000) (quoting Counts v. Am. Gen. Life & Acc. Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997)). "[I]f a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit." Perrino, 209 F.3d at 1318. A district court has the sound discretion "to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate," Counts, 111 F.3d at 108, or where a claimant is denied "meaningful access" to the administrative review scheme in place, Curry v. Contract Fabricators, Inc. Profit Sharing Plan, 891 F.2d 842, 846–47 (11th Cir. 1990).

## III.   ANALYSIS

The parties disagree over which administrator decision is before the Court. Plaintiff focuses almost exclusively on the March 29, 2012, denial of Mr. Sheffield's application for the Waiver of Premium provision, challenging Aetna's determination that he was not permanently and totally disabled and claiming the disability required that premium payments be waived under the

Waiver of Premium provision.  Aetna argues that because Mr. Sheffield did not

exhaust his administrative remedies by appealing Aetna's March 29, 2012,

decision that he did not qualify as being "permanently and totally disabled" under

the Plan, the decision is not before the Court, and the only decision appropriate for

judicial review is the January 21, 2015, denial of Ms. Vaughn's claim for

Supplemental Life benefits.  Plaintiff argues that the exhaustion requirement

should be excused by the Court due to claimed deficiencies in the March 29, 2012,

Denial Letter and the Plan.

      A.     <u>Review of Aetna's March 29, 2012, Denial of Mr. Sheffield's Claim</u>

      The March 29, 2012, Denial Letter required Mr. Sheffield to file an appeal

of Aetna's decision, in writing, within 180 days or by on or about September 25,

2012.  The March 29, 2012, letter told Mr. Sheffield he was entitled to "a review of

the decision and to bring a civil action under Section 502(a) of [ERISA] if the

denial is upheld on appeal."  (AR000343).  It is undisputed that Mr. Sheffield did

not submit a written request for review within the 180-day period.

      Ms. Vaughn argues that despite Mr. Sheffield's failure to appeal his claim,

she is entitled to district court review because the Plan did not provide an adequate

appeal process.  ERISA requires that every employee benefit plan shall "afford a

reasonable opportunity to any participant whose claim for benefits has been denied

for a full and fair review by the appropriate named fiduciary of the decision

denying the claim." 29 U.S.C. § 1133(2). Plaintiff argues that it is "fatal" that

details of the appeal process were not delineated in the Plan but were instead

provided in the March, 29, 2012, Denial Letter. Plaintiff does not, however,

provide any Eleventh Circuit authority that the exhaustion requirement is excused

where the appeal procedures are not explicitly set forth in a plan itself.

The Eleventh Circuit applies the exhaustion requirement strictly. The

Eleventh Circuit has rejected finding a "new exception" to the exhaustion

requirement where "an employer's noncompliance with ERISA's technical

requirements (for example, creating a summary plan description, or delineating a

formal claims procedure) should excuse a plaintiff's duty to exhaust administrative

remedies." Perrino, 209 F.3d at 1316-17; see also Spivey v. S. Co., 427 F. Supp.

2d 1144, 1152 (N.D. Ga. 2006) ("The Department of Labor's regulations

interpreting ERISA make clear that there is nothing inherently problematic in the

placement of binding administrative procedures outside the physical Plan and/or

[summary plan description]."); Bickley v. Caremark Rx, Inc., 361 F. Supp. 2d

1317, 1336 (N.D. Ala. 2004), aff'd, 461 F.3d 1325 (11th Cir. 2006) ("ERISA

exhaustion requirements do not appear to be either as flexible or as discretionary in

this Circuit. . . . The Eleventh Circuit's exhaustion rule could be characterized,

16

practically speaking, as 'if in doubt, exhaustion is required.'").  Plaintiff "should

not be able to avoid the exhaustion requirement where technical deficiencies in an

ERISA claims procedure do not hinder effective administrative review of their

claims."  Perrino, 209 F.3d at 1318.  That the specific administrative review

procedures were not included in the Plan does not excuse Plaintiff from complying

with the exhaustion requirement.

ERISA requires that an employee benefit plan shall "provide adequate notice

in writing to any participant or beneficiary whose claim for benefits under the plan

has been denied, setting forth the specific reasons for such denial, written in a

manner calculated to be understood by the participant."  29 U.S.C. § 1133(1).

Plaintiff argues that the March 29, 2012, Denial Letter failed to comply with the

notice requirements under ERISA because the letter was not reasonably calculated

to notify Mr. Sheffield of Aetna's position and the additional materials that would

assist in the appeals process.  The argument is unsupported by the record.  The

March 29, 2012, Denial Letter quotes the portion of the Plan that addresses the

continuation of Supplemental Life coverage when the Waiver of Premium

provision applies, and it explains which documents were reviewed and states the

medical records upon which Aetna based its decision that Mr. Sheffield was not

permanently and totally disabled.  The letter told Mr. Sheffield he could submit

additional materials to be considered during the appeal of his claim, and described

the kinds of material that could be submitted:

- Any additional medical information or records that would support a finding that you are permanently and totally disabled. This additional medical information should include all objective findings, such as lab tests, x-rays, as well as findings of specific physical or cognitive restrictions of limitations that are determined as a result of a physician's examination [and]

- Any other claim information or documentation you believe would assist us in reviewing your claim.

(AR000343). The record, and the letter on its face, does not show it was deficient.

See McCay v. Drummond Co., 509 F. App'x 944, 948 (11th Cir. 2013) (holding

district court did not abuse discretion in refusing to find deficiencies in denial

notice where notice "communicated to [plaintiff] that he needed to show that he

was totally disabled," and "explained that he could submit 'written comments,

documents, records, and other information relating to [his] claim'").

Mr. Sheffield simply was not denied meaningful access to a review process.

He was given adequate notice of the opportunity and procedure for appealing his

claim. Mr. Sheffield ultimately did not timely appeal Aetna's decision. In short,

the record does not support that Aetna denied Mr. Sheffield access to a meaningful

review process, or that participation in the existing review process would have

been futile. Aetna's March 29, 2012, decision that Mr. Sheffield did not meet the

"permanent and total disability" requirements to trigger the Waiver of Premium provision is not timely or properly before the Court. There also are no grounds to excuse Mr. Sheffield's failure to exhaust his administrative remedies or to find that exhaustion would be futile.

B. Review of Aetna's January 21, 2015, Denial of Plaintiff's Claim for the Death Benefit

Ms. Vaughn's claim, based on her father's claimed entitlement to Supplemental Life coverage—a claim the Court finds is not viable because Mr. Sheffield did not appeal the denial of these benefits—is barred. Even if it was not, Ms. Vaughn's derivative claim for these same benefits is also barred. The Court considers Ms. Vaughn's challenge to Aetna's January 21, 2015, denial of her claim for Supplemental Life benefits. (AR000507-510). The issue before the Court is Aetna's January 21, 2015, denial of Supplemental Life coverage on the grounds that the Supplemental Life insurance lapsed on September 25, 2012, when Mr. Sheffield chose not to contest the denial of coverage. See Reed v. Citigroup Inc., 658 F. App'x 112, 116 (3d Cir. 2016) ("In ERISA cases, the court's focus must be on the Plan's 'final, post-appeal decision,' as '[t]o focus elsewhere would be inconsistent with ERISA's exhaustion requirement.'") (quoting Funk v. CIGNA Grp. Ins., 648 F.3d 182, 191 n.11 (3d Cir. 2011)). Plaintiff cannot end run Aetna's March 29, 2012, decision by challenging Aetna's January 12, 2015, decision. The

Court, for the reasons stated in this opinion, holds that Mr. Sheffield did not have Supplemental Life coverage. For this reason alone, Plaintiff's claim regarding the January 21, 2015, decision fails.

Even if Ms. Vaughn's claim was cognizable, and the Court was required or otherwise chose to review Aetna's disability finding and its decision that Mr. Sheffield did not have Supplemental Life benefits, the review of Aetna's decision shows the January 21, 2015, denial of Plaintiff's claim was not wrong and certainly was not arbitrary and capricious.

"The Court must limit its review of the evidence to the same record that was before the plan administrator at the time the denial of benefits was made." Acree, 917 F. Supp. 2d at 1306; see Melech v. Life Ins. Co. of N. Am., 739 F.3d 663, 672 (11th Cir. 2014). "[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant" to show, by a preponderance of the evidence, that he was entitled to the benefits he sought under the plan. Muniz v. Amec Const. Mgmt., Inc., 623 F.3d 1290, 1294 (9th Cir. 2010); see Armani v. Nw. Mut. Life Ins. Co., 840 F.3d 1159, 1163 (9th Cir. 2016); Rao v. Life Ins. Co. of N. Am., 100 F. Supp. 3d 210, 220 (N.D.N.Y. 2015) (noting that de novo review involves a preponderance of the evidence standard of proof).

Assuming all of Plaintiff's alleged facts as true, and construing them under the Plan language submitted as part of the record, the Court finds that Aetna's decision on Plaintiff's claim is not de novo wrong. The January 21, 2015, Denial Letter provides the grounds for Aetna's decision. Upon completion of Aetna's review of Plaintiff's claim, Aetna found that Mr. Sheffield was not permanently and totally disabled, the Waiver of Premium provision did not apply, and Mr. Sheffield did not have Supplemental Life coverage at the time of his death. (AR000509). The requirements for additional benefits under the Supplemental Life insurance simply were not met. Aetna determined that there was insufficient medical evidence to support a permanent and total disability under the Supplemental Life insurance provisions, and coverage lapsed on March 29, 2012, the date on which Aetna sent Mr. Sheffield the denial letter. (Id.). When that decision was reached, Lafarge stopped paying premiums for Mr. Sheffield's Supplemental Life coverage, and coverage thus was not in place on October 24, 2012, when he died. (Id.).

Aetna's decision denying Supplemental Life benefits was not de novo wrong. Mr. Sheffield did not have coverage at the time of his death. Even if it was, Aetna's decision to deny Plaintiff's claim for Supplemental Life benefits, if there indeed was one, was, for the reasons stated above, not arbitrary and

capricious and was properly denied. [13]  Aetna's Motion for Judgment on the

Administrative Record is granted and Plaintiff's Motion for Summary Judgment[14]

is denied.[15]

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Aetna Life Insurance

Company's Motion for Judgment on the Administrative Record [22] is

**GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Stephanie D. Vaughn's Motion

for Summary Judgment [25] is **DENIED**.

---

[13]    The Court has considered that Aetna was the insurer and the entity
authorized to decide if Mr. Sheffield was permanently and totally disabled.  The
Court does not find these responsibilities presented a conflict of interest that
rendered Aetna's decision arbitrary or capricious.

[14]    Ms. Vaughn's Motion for Summary Judgment addressed the same issues
presented in Aetna's Motion for Judgment on the Administrative Record.  In
deciding Aetna's motion, the Court considered the arguments made by
Ms. Vaughn in her summary judgment submission.  In granting Aetna's Motion for
Judgment on the Administrative Record, the Court necessarily denies the summary
judgment motion filed by Ms. Vaughn.

[15]    Aetna filed a Motion for Leave to File Under Seal the administrative record
in this case, which contains Mr. Sheffield's personal health information and
medical records.  Aetna's Motion for Leave to File Under Seal, which is
unopposed, is granted.

**IT IS FURTHER ORDERED** that Aetna's Motion for Leave to File Under Seal [24] is **GRANTED**.

**IT IS FURTHER ORDERED** that Aetna's Motion for Oral Argument [32] is **DENIED**.

**SO ORDERED** this 17th day of May, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE